COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| JOEL THOMAS BOWEN | | No. 08-11-00129-CR |
| AKA J.T. BOWEN, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | Criminal District Court No. 1 |
| v. | § | |
| | | of Tarrant County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC # 1189455D) |
| Appellee. | § | |

## **O P I N I O N**

Joel Thomas Bowen appeals his conviction of possession of more than four grams but less than 200 grams of methamphetamine (Count II), enhanced by a prior felony conviction. After finding Appellant guilty of Count II, the jury found the enhancement paragraph true and assessed Appellant's punishment at imprisonment for fifteen years. We affirm.

## **FACTUAL SUMMARY**

In April 2009, Detective Dusty Smith of the Hurst Police Department was assigned to the Tarrant Regional Auto Crimes Task Force which investigates auto theft and auto-related crimes. While investigating a motorcycle theft case, Smith obtained and executed a search warrant for a residence located at 7048 Glen Hills in Tarrant County. The warrant did not list Appellant as the owner of the property but he was present in the residence along with three females. Two of the females were in the living room and the third female was in a back bedroom. The officers found Appellant's personal property in the converted garage. Smith testified without objection that he had spoken with the homeowner, David Rouse, who told him that Appellant was living at the residence. The officers had also seen Appellant's Chevy truck parked in the driveway when they

conducted surveillance prior to executing the search warrant and they had found Appellant's personal property in the converted garage.

Detective Bryan Laurie is employed by the Haltom City Police Department and assigned to the Tarrant County Narcotics Unit. Laurie participated in the execution of the search warrant and briefly entered the bedrooms before moving to the converted garage bedroom. Laurie estimated that only thirty-five to forty-five seconds had elapsed since he first entered the house. The bedroom contained a couch, coffee table, dresser, closet with some clothing, desk, an end table and lamp, and some moving boxes. Other detectives had already entered and Laurie saw Appellant, wearing only a pair of red boxers, standing between the sofa and coffee table. In a search of the moving boxes, Laurie found a high school diploma and some mail bearing Appellant's name. The officers found methamphetamine on the coffee table and scattered on the floor. It appeared to Detective Laurie that the methamphetamine had been thrown. A small baggie of methamphetamine weighing a total of 7.34 grams was located on the coffee table. Inside a Cheez-It box on the coffee table, the officers found small baggies and a digital scale. A digital scale is commonly used for weighing narcotics and the small baggies are used to package narcotics for sale on the street. Appellant's wallet containing his driver's license was on the coffee table only inches away from the loose methamphetamine. The room also contained a washing machine which was not connected. Beneath the washer, the officers found a handgun inside an unlocked floor safe.

Appellant's girlfriend, Libby Franklin, testified that she and Appellant were in the process of moving in together in April 2009. Appellant had been living on Gill Street in Blue Mound, Texas. They dropped off Appellant's truck at a house located at 7048 Glen Hills. She met David Rouse and his girlfriend, Lisa, at the house that day. Rouse was going to fix

Appellant's truck. Appellant also left his dog at the house because he and Rouse intended to breed their dogs. On April 17, 2009, she drove Appellant to the house so he could pick up his truck and dog while she went to pick up her daughter. She did not see him again until the following morning when she bonded him out of jail. Franklin testified that some of Appellant's belongings were taken from the truck into the house.

Appellant testified that he knew David Rouse because they had worked construction together. Even though they no longer worked together, they socialized. Appellant denied ever living with Rouse. In April 2009, Appellant called Rouse and asked him to work on his truck. When Rouse learned that Appellant had a bulldog, he told Appellant to bring his dog to meet Rouse's dog and brought up the idea of breeding them in the future. Appellant dropped off his truck and dog on Sunday, April 12, 2009. Appellant went back the following day to give Rouse $450 to buy parts and fix the truck. The following day, April 14, Appellant called Rouse and asked him to move some of the boxes from the truck into the house where they would be safer. One of those boxes contained Appellant's diploma. The boxes were in Appellant's truck because he was in the process of moving from Blue Mound to Grapevine. Rouse called Appellant on Wednesday, April 15, and told him that his truck would be finished by the next morning. On Thursday afternoon, April 16, Lisa called and told Appellant that Rouse had been arrested. She instructed him to pick up his truck. Appellant went to the house the next evening after work and talked to Lisa about what had happened to Rouse. Appellant was dressed in a muscle shirt and gym shorts. He was in the kitchen talking to Lisa when he heard a loud boom and suddenly men were in the house yelling, "Get on the ground!" Appellant stayed on the floor until the officers stood him up and made him sit in the living room. They made him remove his muscle shirt so they could look at his tattoos while asking him whether his tattoos were gang-

related. The officers handcuffed Appellant and made him sit on the couch for about thirty minutes before moving him into the converted garage. Appellant told them that the methamphetamine was not his and he did not know whose it was because he did not live there. Appellant admitted being convicted of resisting arrest and criminal mischief in 2002. In 2003, he was convicted of possession of methamphetamine with intent to deliver. He entered a plea of guilty and was placed on community supervision. The court revoked his community supervision because Appellant left a treatment center and failed to provide a urinalysis when requested. Appellant had admitted at the time that his drugs of choice were marihuana and methamphetamine and he was having problems with methamphetamine. The trial court sentenced Appellant to serve a four year term of imprisonment and he was on parole at the time of his arrest in this case.

The jury rejected Appellant's defense and found him guilty of possessing more than four grams but less than 200 grams of methamphetamine as charged in Count II of the indictment. The jury found the enhancement paragraph true based on Appellant's plea of true and assessed his punishment at imprisonment for a term of fifteen years.

## SUFFICIENCY OF THE EVIDENCE

In his sole point of error, Appellant challenges the sufficiency of the evidence to prove beyond a reasonable doubt that he possessed methamphetamine. More specifically, he contends that the evidence shows nothing more than mere presence at the residence where the methamphetamine was found.

### *Standard of Review and Applicable Law*

In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard.

*Brooks v. State*, 323 S.W.3d 893, 895-95 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894–95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.*; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Arzaga*, 86 S.W.3d at 777.

The Penal Code defines "possession" as actual care, custody, control, or management. TEX.PENAL CODE ANN. § 1.07(a)(39)(West Supp. 2012). To prove unlawful possession of a

controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); *see* TEX.HEALTH & SAFETY CODE ANN. § 481.115(a)(West 2010). Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the contraband, (4) whether he was under the influence of a controlled substance or narcotic when arrested, (5) whether he possessed other contraband when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he owned or had the right to possess the place where the contraband was found, (12) whether the contraband was found in an enclosed place, (13) whether he was found with a large amount of cash, (14) whether his conduct indicated a consciousness of guilt, (15) whether he made incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) whether he was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n. 2; *Lassaint v.*

*State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove knowing "possession." *Evans*, 202 S.W.3d at 162 n. 12. They are not a litmus test. *Id.* It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162.

### *Review of the Evidence*

Appellant argues that the evidence is insufficient because nothing links him to the house or the methamphetamine and he was in the kitchen when the officers entered the house. Appellant's argument fails to review the evidence in the light most favorable to the verdict. When viewed in the proper light, the evidence demonstrated the presence of affirmative link factors one, two, three, ten, eleven, and fourteen. Appellant was present when the search warrant was executed (first factor) and there is at least some evidence that officers found him in the converted garage near the coffee table where loose and packaged methamphetamine and paraphernalia was in plain view (factors two, three, and ten). Appellant testified that he did not go into the converted garage until the officers took him in there approximately thirty minutes after they entered the house. Detective Laurie testified, however, that he went into the converted garage only thirty-five to forty-five seconds after entering the house and other officers were already in there with Appellant. Appellant's claim he had not gone into the converted garage prior to the officers taking him in there is also contradicted by the presence of his wallet on the coffee table. That wallet was found only inches from the loose methamphetamine, a digital scale and small baggies. Appellant also testified he had never lived in the residence, but the homeowner, David Rouse, told the police that Appellant was living at the house (factor eleven). Rouse's statement is supported by the evidence showing that boxes containing Appellant's

personal property were in the converted garage. There is also evidence that Appellant knew the substance he possessed was methamphetamine because he admitted that he had used methamphetamine in the past. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995)(presence of drug paraphernalia in home with contraband supported conclusion the defendant knew he possessed cocaine). Detective Laurie testified that it appeared to him that someone had thrown some of the methamphetamine from the coffee table onto the floor of the converted garage. This evidence indicates a consciousness of guilt and permits an inference that Appellant exercised control over the methamphetamine by attempting to scatter it in the seconds after the police entered the house to execute the search warrant (factor fourteen). We conclude that the evidence is legally sufficient to support the jury's finding that Appellant knew the substance on the coffee table was methamphetamine and he exercised control, management, or care over it. *See Evans*, 202 S.W.3d at 163-66 (in possession of cocaine case, evidence was sufficient to show that the defendant exercised care, control, or management of cocaine discovered on coffee table in house where his aunt lived even though aunt told police officers that cocaine was hers, and defendant offered reasonable alternative hypothesis that he was merely checking on aunt while his grandmother was away; defendant was sitting directly in front of 14 grams of cocaine on coffee table, cocaine was within arm's reach and was in plain view, and defendant was alone in house, knew that "[d]rugs" were why officers had entered house, and received mail at house). Issue One is overruled. The judgment of the trial court is affirmed.

October 17, 2012
                             _____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)